Donald W. Smith v. Commissioner.
Donald W. Smith v. Commissioner
Docket No. 24512.
United States Tax Court
1950 Tax Ct. Memo LEXIS 63; 9 T.C.M. (CCH) 933; T.C.M. (RIA) 50249; October 27, 1950
Earl Q. Kullman, Esq., for the petitioner. Lester H. Salter, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $4,222.38 in income tax of the petitioner for 1943. The petitioner assigns as error the action of the Commissioner in (1) taxing to the petitioner for 1942 and 1943 his wife's share of community income, (2) including a per diem allowance for meals and lodging in 1943 income, and (3) allowing petitioner $519 instead of $1,038 as a credit under section 35. Findings of Fact The petitioner filed returns for 1942 and 1943 on a community property basis with the collector of internal revenue for the district of Louisiana. The petitioner was born in Greenwich, Connecticut in 1908 and continued to reside there until 1930. He entered the *64 employ of Seatrain Lines (hereafter called Seatrain) and was sent to New Orleans, Louisiana, in September 1930. He remained there until November 1939, advancing through various positions until he held that of Operating Manager at New Orleans. Seatrain is a steamship company engaged exclusively in the operation of ocean-going vessels designed to carry railroad cars. The cars are lifted on and off the vessels by special facilities installed at the terminals. Havana, Cuba, was the only foreign terminal of Seatrain at all times material hereto. New Orleans was a terminal in the United States. The petitioner married Evelyn Werlein in 1934. She had always lived in Louisiana. They have one child, born in 1938. The petitioner and his wife employed an architect and built a house in New Orleans in 1937 which they then occupied as their home until they moved to New Jersey in November 1939. The move was made because Seatrain wanted the petitioner to gain experience in the building of its ships then under construction in New Jersey and wanted to place a more experienced man in charge at New Orleans while some additional port facilities were being installed nearby. The company intended that *65 the petitioner would remain in New Jersey for only a few years. The petitioner and his wife expected and intended to return to New Orleans as soon as his temporary duties in New Jersey were completed. The executive office of Seatrain was in New York City. The petitioner worked at the Seatrain terminal at Hoboken, New Jersey as operating manager during the time he was in New Jersey. The Hoboken terminal was closed, due to war conditions, and the petitioner returned to New Orleans in April 1942. The petitioner rented an apartment in New Orleans from about April 1942 to September 1942 and resided with Evelyn's mother in New Orleans during September and October 1942. New Orleans became the domicile of the petitioner prior to 1939 and continued to be his domicile until after the taxable years. The petitioner resumed his former duties with Seatrain at New Orleans after returning there in the spring of 1942, but after a month or two, all of the vessels belonging to Seatrain were requisitioned by the War Shipping Administration. Seatrain formed Seatrain Management Corporation (hereafter called Management) to act as general agent in the operation of its vessels for the War Shipping *66 Administration. The petitioner became an officer of Management and performed duties for that corporation which were identical with those which he had previously performed for Seatrain. The terminal at New Orleans was closed and a new terminal was opened at Port Everglades, Florida, at the order of the War Shipping Administration, to shorten the water route to Havana and thus increase tonnage and reduce convoy requirements. Seatrain transferred a crane from New Jersey to Florida to load and unload the vessels. The Florida port was Management's only terminal in the United States. It became the petitioner's principal place of business and he lived nearby with his family from October 1942 until the early part of 1945 at which time the Florida operations were discontinued and the petitioner returned with his family to New Orleans. Management paid the petitioner $4.00 a day as an allowance for living expenses while he was employed in Florida. The payments for 1943 were in a total amount of $1,460. Seatrain had no intention of using the Florida terminal for its own purposes but intended to have its terminal at New Orleans as soon as it could resume its regular business. The Commissioner, *67 in determining the deficiency for 1943, has held that the petitioner is not entitled to apportion his net income for 1942 and 1943 between himself and his wife upon the community property basis. The $1,460 received by the petitioner in 1943 as a per diem allowance for living expenses while in Florida was reported as income on the original return of the petitioner for 1943. The Commissioner, in determining the deficiency, has made no adjustment in connection with that amount. The petitioner's employer withheld $1,038 from his wages for 1943 pursuant to section 1622(a). The petitioner, on his return for 1943, claimed credit for $519 representing income and victory tax withheld by his employer. The Commissioner, in determining the deficiency, gave credit for the $519 claimed on the return as taxes withheld. Opinion MURDOCK, Judge: The first question is whether the community property laws of Louisiana apply to the petitioner's income for 1942 and 1943 so that he was required to report only one-half of that income for federal income tax purposes. This question depends upon whether or not he was domiciled in Louisiana during these years. The Commissioner concedes that the petitioner *68 was domiciled in Louisiana at the time he left to go to New Jersey in November 1939 but contends that the petitioner acquired a new domicile in New Jersey which he retained until after the close of 1943. There is no difference between the parties in regard the law of domicile. "A removal which does not contemplate an absence from the former domicile for an indefinite and uncertain time is not a change of it. But when there is a removal, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the exercise of some particular profession, office, or calling, it does change the domicile." Ennis V. Smith, 14 Howard 399. A domicile once acquired remains the domicile until a new residence is established with an intention to retain it for the foreseeable future to the exclusion of the old residence. A finding has been made that the petitioner's domicile remained in Louisiana from some time prior to 1939 until after the close of the taxable year. All of the evidence has been carefully considered in reaching that conclusion. It is not all one-way but it preponderates in favor of the contention of the petitioner. *69 It shows that the petitioner left New Orleans in November 1939 for a temporary business absence after which he and his wife expected to return to New Orleans where he would resume his former duties. That is what actually occurred. He was away about two and one-half years and then returned to New Orleans but left shortly for Florida due to the war. The Court has not overlooked evidence on which the respondent relies including evidence of the breaking of a number of New Orleans' ties, the establishment of a home in New Jersey, registration for voting in New Jersey, and some damaging statements made by the petitioner and his employer. Nor has the Court overlooked justification given by the petitioner for some of the acts upon which the Commissioner relies. It is quite clear that the petitioner was brought to New Jersey on a temporary basis. The petitioner and his wife testified that they did not intend to make their home in New Jersey permanently, they had every intention of returning to New Orleans, and they had no intention of abandoning it as their home during their temporary sojourn in New Jersey. The evidence above discussed and all other evidence has been considered in making the *70 finding of fact which disposes of this item. The next issue as presented by the pleadings is whether the Commissioner erred by including a per diem allowance for meals and lodging paid to the petitioner by his employer in 1943. The total amount paid was $1,460. It was included in income by the petitioner on his original return and left there by the Commissioner. The Commissioner argues that the amount is not deductible as traveling expenses under section 23(a)(1)(A). The petitioner casts that argument aside and claims that the amount does not represent taxable income but was merely the reimbursement of a part of his expenses. His theory is that the allowances represent reimbursement for losses and reimbursement of losses does not constitute income. But no losses are involved. It was held in Ollie V. Kessler, 39 B.T.A. 646, 651, that amounts received as a per diem allowance for board and lodging would first have to be included in gross income and, if any part was deductible, it would be only the amount actually expended. If deductions were allowable for the expenditures, it might make no mathematical difference in some instances whether the allowance was reported as income *71 and then offset by the deductions or whether the allowance was not reported and the deductions were not taken, but here the petitioner was not entitled to any deduction for traveling expenses including board and lodging while away from home. Commissioner v. Flowers, 326 U.S. 465. The payments in question were a part of the petitioner's gross income representing additional compensation paid to him by his employer, apparently to compensate him for the inconvenience and additional expense of living for the time being in Florida. The last issue is whether all or only onehalf of the taxes withheld by the employer of the petitioner during 1943 are deductible by him. He reported his income upon the theory that one-half of his wages belonged to his wife under the community property laws of Louisiana and, therefore, he claimed that only one-half of the amount withheld was withheld from his income. The Commissioner made no change. It is not clear whether or not the petitioner is claiming that the entire amount withheld should be deducted from his taxes but if he is, there is no merit in his claim. The Commissioner contends that the Tax Court has no jurisdiction over this issue *72 because the amount withheld does not enter into the computation of the deficiency. It is not necessary to decide that question since the Court is leaving the parties as it found them. Decision will be entered under Rule 50.